Thank you, Your Honor. May it please the Court, I'm trying to keep three minutes for rebuttal. Doug Beavers from the Federal Defender's Office on behalf of Uriel Rivera-Gomez. This case is about whether the Court will treat reentry after deportation as it would any other case. In United States v. Cruz-Gramajo, the deported aliens lawyers were asking this Court to create a special rule for reentry defendants to help them. This Court correctly rejected that plan for special treatment for reentry cases. However, now it is the United States that I believe is trying to encourage the Court to create a special rule for reentry cases. In the Cruz-Gramajo case, the aliens argued for a rule that no crimes committed while the alien was illegally here could be counted in the criminal history because the crime is being committed at the same time. In the reverse, in this case, the United States wants to create a special rule that all crimes committed when the alien is illegally here automatically cannot be counted in the criminal history because the crime is being committed at the same time. In this case, in that case. And why isn't that relevant here, where the crime of reentry is complete when the defendant enters, and then, in your case, subsequently, quite on a different temporal occasion, another crime occurs, the resisting arrest? So it seems like, at least so far as Cruz-Gramajo goes on that temporal distinction, that they would be two different crimes. Well, as to the temporal matter, I think that's clearly resolved in Cruz-Gramajo, and it's straightforward in the guidelines. The – looking at a case as a regular case, acts committed at any time that are directly related to the crime always can be relevant conduct. Well, you don't mean directly related in general. I mean, here, there's a specific – as I understand the distinction, the difference is that it says in the course of attempting to avoid detection or responsibility for that offense, and that's what you're claiming here. Yes. So the temporal connection is irrelevant. I suppose it is irrelevant because it could be committed even after you're discovered, say, trying to beat up witnesses or something, could be – could be still related to the crime. But there were two things that concerned me about your argument. One is, it's not apparent that he was actually trying to avoid detection for the crime as opposed to avoiding deportation. Well, I don't – I don't see that that's – is any – in any direct way different. I mean, whether the prosecution for the crime of reentry after deportation is criminal and civil – criminal and civil process, he did say that he was trying to avoid deportation, but that is still a – it's a civil prosecution. And I would see that as closely enough related that in the way that a person who is arrested at the border for illegal entry may never have heard of the crime of illegal is obviously going to be applied an enhancement for obstruction. And then the other piece is, what is the consequence of this being relevant conduct? The government contends that the consequence is that he's just going to get a higher enhancement because it's then relevant conduct for purposes of determining the actual baseline level for guidelines purposes. And they cite a couple of provisions that they say would end up increasing his sentence or his detention sentence. That's a danger. That is a danger that he was fully aware of when he decided to testify and to raise this issue. I don't think the official – official employee enhancement would apply under this reentry guideline, but I think the reckless endangerment one is one that in a full hearing, if we – if we are sent back and the government brings on its witnesses, it is possible that he could get a much worse sentence. So the relevant point is the district court kept thinking this was a mitigation notion, but it isn't really a mitigation. It's just whether you're in this box or that box. Right. That's – that's how we see it. And if it is relevant conduct, he takes the whole risk. That's what they didn't do in Cruz-Gramajo. They wanted to get the benefit without taking any risk. They didn't want to testify. They didn't want any upward departures. They wanted some automatic rule to benefit. This client is willing to go the whole way. He testified. He risks obstruction of justice if the judge just doesn't believe him. He risks reckless endangerment if the officers were to testify, and it seems really dangerous. So it's your argument that the court has the obligation to at least inquire into the motivation. Is that the key factor here? Not to inquire, but in this case, the – that provision, whether a evading detection or not, in some cases may be obvious, but in many cases will depend on what defendant's motivation was. And if the defendant raises that with his testimony, our argument is that the court has to resolve that. It would be the exact reverse if a person was arrested by immigration and they came up and said, no, actually, I was trying to avoid some state arrest. I didn't know about the crime of reentry after deportation. It's – these – the defendant. Those are much harder to prove. In this case, it's hard to prove because there's two crimes under investigation, and – but the government didn't put on any evidence which would show that it was highly likely that the defendant actually knew about the gun being found at that location. And it's a – if it's a factual issue, the court just has to decide it. It's only preponderance standard, so it's not that difficult. So the court, and this is your Rule 32 argument, didn't decide that. Right. He didn't decide in general what the – what his motive was. He made an assumption, but he didn't actually decide it. Right. And I think that that – all the other downward departure arguments, even based on the government's argument, that the consecutive sentencing, the – what tried to argue against that, it's not unfair delay because the crimes are unrelated. Again, it's the same issue. The court – if the court had decided they were unrelated, then that would resolve the time delay issue. But the court didn't resolve it, and that meant that procedurally, the defendant couldn't – didn't get a full ruling on any of his legal arguments. Thank you. Okay. Thank you. Good morning. May it please the Court. My name is Ian Garrick, attorney for the United States in this matter. I have two main points for you, Your Honors, this morning. One is that the sentence in this case was both procedurally correct and substantively reasonable. The primary argument that defense puts forth, and as Your Honors have already discussed with the defense, is regarding the Cruz-Ramajo case and whether or not this was relevant conduct, his prior – I don't see any relevance to the Cruz-Ramajo case. It just doesn't seem pertinent. Because the argument here is on a particular language, which was not involved in Cruz-Ramajo, as I understand it. That is, the question of avoid detection or responsibility. The relevance, Your Honor, and why Cruz-Ramajo – the government would contend that Cruz-Ramajo controls is the way this – the jurisprudence in this Court has said you have to analyze the guidelines in context with other guidelines. Here, the defendant is putting forth a specific – that sentence to avoid detection, which is right next to the sentence occurred during the commission of offense in a vacuum. And in Cruz-Ramajo, this Court is saying that the Court said that you have to analyze 1B1.3, A1, and A2 in context with the other guidelines, specifically in the context where the Court first addressed 1B1.A2, where it found that it's – the guideline for reentry to L1.2 is not an offense which groups, so therefore, that portion of 1B1.3 does not apply. Secondly, Cruz-Ramajo found that when you look at 1B1 – 1B1.3 – there's a lot of numbers here – that it says this is only for determining the specific – the base offense level for a guideline, the specific offense characteristic of that guideline, the illegal reentry guideline. Chapter 2 cross-references Chapter 3 adjustments. And the Court went on to explain that with the reentry guideline, 2L1.2, the only things that are relevant are the crimes that occurred prior to deportation, and those are already – Kagan. That was the argument that was being made. Do you mean to say that if somebody came up to someone and said, I want to arrest you – if a federal official came up and said, I'm going to arrest you for illegal entry, and he ran away, that this guideline wouldn't apply? Well, the – And then they tried to arrest him for resisting arrest in addition to the crime. It depends if you're talking about a state officer or – I'm not talking about a state officer. I'm talking about a federal officer, to make – to clarify – to make it a little simpler. If it were a federal immigration officer, because that – it only applies – the defense of being found is when an immigration officer finds an individual. Okay. That's fine. I'm trying to get to the point, which is whether the language of avoid – come up with any hypothetical you want. But ultimately, the question was, does the language of 1B1.3a)(b), with regard to attempting to avoid detection or responsibility, apply to this crime in general? No, it does not, Your Honor. I – Do you mean to say that if somebody came up – so you couldn't consider it relevant conduct, and it wouldn't count for calculating the guidelines, for example, that the person tried to run away? Or punch somebody? If that person were charged – I assume, Your Honor, is indicating that that person is charged both with the assault and the illegal reentry in that case, and is being prosecuted under two counts. Okay. Okay. I assume that's the hypothesis. Right. In that case, under 3D1.2, those offenses don't group, because the – Well, they don't group, but – they don't group. But are you saying that as a matter of law, a resisting arrest count can never be relevant conduct for an illegal reentry? If they are prosecuted under the same – there are two – there would be two counts and two counts of conviction. And in that case, they would not group. So there would be an additional enhancement. And that's why, when you look at it, the guideline for grouping is 3D1.2, which this Court specifically went to and said that illegal reentry does not group with other offenses, because it – the harm occurs when the person reenters and all the way to when they're found. And that's a different – the avoid detection or responsibility language. I mean, if somebody murders somebody, that's when the harm occurs. And then if they're later arrested, apparently under this guideline, if they're attempting to avoid detection or responsibility and are charged with resisting arrest, that's still relevant conduct under this. Where the – when the harm occurred, it isn't relevant under – it can't be. Part of the broader consequence, Your Honor, is that this – in this case – in this specific case, the defendant resisted arrest from State officers. I want to – I want to answer to what I just said. If somebody is – I mean, I understand that it's a bit of a problematic hypothetical, because you don't usually get charged with murder for – under Federal law, but sometimes you do. So if somebody murdered someone, that's when the harm of murder occurs. If later on somebody tries to arrest them and they avoid detection or responsibility and are charged with resisting arrest, plainly this thing has to apply, no? It depends on the guideline that would be at issue, Your Honor. And in this – in – I don't understand. This guideline seems to be a general guideline. It doesn't seem limited to anything else. Well, the limitations are – well, one, the limitations are that it applies to specific – you have to look at the base offense level, specific offense characteristic, any enhancements, and those don't fall in that – that category under this guideline. So I – the way I write Cruz-Gamajo is that you have to read the guideline in context with the specific guideline at issue, and if Your Honor is referring to a murder and a later resisting arrest, I don't know the guideline for a Federal resisting arrest, but we would have to assume they're both Federal cases. And based on the analysis, I don't see how you could justify – and just as the Court in this case said, you can't use one course of criminal conduct to justify another. But you're not justifying anything. You are simply putting it in a different box, i.e., it's going to be counted in the guidelines as relevant contract rather than as criminal history. That's all you're doing to it. You're not saying that it's gone. It's not finished. It's not – you're not exonerated from it. It's just not – it's not in that box. It's in that box. Right. And the point, I think, part of this, in Cruz-Gramajo, the Court stated that these are separate harms. A separate harm occurs by the illegal reentry itself, the societal harm. All right. But why, then, aren't you reading this language out of the guideline? It's never going to be true that attempting to avoid detection or responsibility is the same harm as the underlying crime. That's never going to be true. In Cruz-Gramajo, and I think there would be other cases where this guideline would apply, financial fraud cases where there could be relevant conduct. And I think that's where you start looking at the specific guidelines when you go to 1B1.3. But if somebody – to fraud somebody and then resist arrest, those are different harms. You can always say they're different harms. You have to look at the specific facts and whether or not they fall within the context of the guideline. I just don't understand what you're saying. The government's point, Your Honor, is basically that the defense would have the court look in a vacuum of whether or not – if I could back up, and the issue is not whether or not it – the issue the defense put forth is the government's asking for a special rule. The government's not asking for a special rule. The government is just saying under Cruz-Gramajo, the district court is not precluded from, or is not – must not exclude this type of prior conviction as relevant conduct. The court can look at it, but it's not required. It's a – it states a permissibility of whether or not it has to, and the court in Cruz-Gramajo, it limited the holding, saying the court is not required to count it as relevant conduct. And even so, Your Honor, as you pointed out earlier, there were findings in this case regarding the prior resisting arrest that the defendant himself stated that he was – resisted arrest to avoid the consequences of deportation. That has nothing – being deported has nothing to do with the offense of being prosecuted for a prior illegal reaction. Kagan. All right, but here we – the problem with that is we don't have any finding here about what his intent was, because the district court never made one. The district court said in the record that even if it – he did have that intention and the court said I can appreciate you may have had that intention, that does not justify the conduct. So even with that finding, the district court is saying that it would not have found that that would have mitigated the conduct, and even so, the district court, and as the government argued, that enhancements would apply if you were to consider that relevant conduct. And the court specifically stated, if anything, I find that this is aggravating conduct that you're referring to rather than mitigating conduct. Which he had – which under Booker he was entitled to take into account separately if he wanted to. So that's not really the issue. And you point out that it may be relevant conduct and he may get a greater enhancement and your opponent says that may be. But that's not the question. The question is, is the calculation done properly? He may end up with a higher level. Right. But that would go into the harmless error argument that the government's made, that he's going to end up the same or more. But we don't know any of that because there are no findings. Well, the government believes there was, under the laws stated in Cardi and other decisions, the government would contend there is sufficient information in the record for meaningful appellate review in what the district court's position was. It would be helpful to me if you try once more to explain your argument. Because it seems to be similar to what the district court was saying. The district court kept saying this is – that this can't be right because then he just ends up, you know, better off for having resisted arrest, which isn't exactly right. But he was – he was – the district court was, I think like you are, concerned with this reading of the statute. But what he never explained is why it isn't what the statute says, whether it's desirable or not. And I'd like you to try one more time to tell me why that isn't what the statute says. If I could explain before I get to that. Before, when this hearing was held, we did not have the benefit of Cruz-Garmajo. So we were looking at the Fifth Circuit's case in Vargas-Garcia. The analysis that we now have to apply, because there is now a Ninth Circuit precedent, is from Cruz-Garmajo and the way the court has said we need to look at the guidelines in their context and not in their vacuum. And in Cruz-Garmajo, the government's point is that essentially defendant is taking one phrase to avoid detection or responsibility for that offense right next to the sentence that was used in Cruz-Garmajo during the commission of the offense. In Cruz-Garmajo, the court said you're not even getting to 1B1.3A1 because this doesn't apply to illegal reentry. And that is the government's argument. And the court in Cruz-Garmajo, as Judge Akuta said, it's kind of a heavy opinion. I definitely agree. But I believe that's the analysis you have to follow. It's the more taking all those guidelines into context for a 1.1, 1B1.3, and to a 1.2 that you don't even get there. That's the government's point, that this was not intended by when you look at 201.2, it does not, is not relevant to the base offense level, specific offense characteristic, Chapter 2 cross-references and Chapter 3 adjustments. And I believe my time has expired. Thank you very much. Thank you. Thank you. If I could respond with one other issue that the court mentioned about whether the defendant was trying to avoid deportation or the crime itself. And under the definition of relevant conduct in 1B1.3, it just says, in the course of attempting to avoid detection or responsibility for that offense, and there's nothing that suggests the person has to know what they're doing is a crime. And I think that that's shown by looking to the obstruction of justice guidelines in 3C1.1, where in application 04B, it mentions that committing perjury in a civil proceeding if the perjury pertains to conduct that forms the basis of the offensive conviction. It's not the type of conduct that's involved in relevant conduct determinations such as obstructing justice can include matters which occur long after the offense. And I think looking at the other types of conduct under obstruction of justice, obstruction of justice is something considered in basically every federal case, even if the pre-sentence report says there's nothing involving obstruction of justice. But all of those factors involve matters which occur long after the incident and involve matters that would be mostly after the crime is solved. Some of those matters are approached in this case by the facts as described in the contested facts in regarding how this arrest happened. I still don't think that the government's evidence in the case reaches a point where they could show this resisting arrest was obstruction, but even if it were, it would be possibly a better result. Thank you. Thank you very much. Thank you, counsel. United States v. Rivera-Gomez is submitted.
judges: Goodwin, Berzon, Ikuta